IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

THOMAS P. TAYLOR                                          PLAINTIFF


        v.                       CIVIL NO. 11-3124


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                           DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

        Plaintiff, Thomas P. Taylor, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

        Plaintiff protectively filed his current application for DIB on October 30, 2009, alleging

an inability to work since June 12, 2006,[1] due to a major depressive disorder, anxiety, seizures,

migraines, and a loss of memory.  (Tr. 244).  An administrative hearing was held on April 4,

2011, at which Plaintiff appeared with counsel and testified. (Tr. 30-96).

---

[1]        Plaintiff filed a prior application for disability benefits and an ALJ issued an unfavorable decision on July 31, 2009. (Tr. 8, 100- 108).  Due to the fact that Plaintiff alleged an onset of disability of June 12, 2006, in the current application, the ALJ addressed the prior application and found no grounds upon which to reopen the prior application pursuant to 20 C.F.R. § 404.957.  The ALJ in the present case also explicitly ruled that the issue of disability on or prior to July 31, 2009, is *res judicata*. See Robbins v. Secretary of HHS, 895 F.2d 1223, 1224 (8th Cir. 1990)  Therefore, the relevant time period at issue in this case, is August 1, 2009, through June 16, 2011, the date of the ALJ's decision.

By written decision dated June 16, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 10). Specifically, the ALJ found Plaintiff had the following severe impairments: prescription medication dependence and a mood disorder. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 11).   The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work where the complexity of tasks is learned and performed by rote, with a few variables and little judgment required; and to work where supervision is simple, direct, and concrete.

(Tr. 12). With the help of a vocational expert, the ALJ determined Plaintiff could perform his past relevant work as a fast food worker, a chalk board framer, a glue machine tender, and a finish inspector.  (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 18, 2011. (Tr. 1-4).  Subsequently, Plaintiff filed this action. (Doc. 1).  Both parties have filed appeal briefs, and the case is now ready for report and recommendation.  (Docs. 7, 9).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

-2-

II.     **Evidence Presented:**

At the time of the administrative hearing before the ALJ on April 4, 2011, Plaintiff testified that he was thirty-eight year of age, and that he had obtained a high school education and additional vocational training.  (Tr. 33).

The record reflects that prior to the relevant time period Plaintiff sought treatment for injuries incurred after his involvement in motor vehicle accidents, routine medical issues, and mental health treatment.   The medical evidence for the relevant time period reflects the following.  On August 13, 2009, Plaintiff had no new complaints and was in the office because he needed a Depakote and Cymbalta prescription.  (Tr. 392).  Nurse Becca Collins noted Plaintiff was compliant with his medication.

On August 17, 2009, Plaintiff was seen for an ingrown toenail.  (Tr. 378).  Plaintiff wanted his toenail excised.  Upon examination, Dr. Blake Chitsey noted Plaintiff's extremities showed an ingrown toenail with some cellulitis.  Plaintiff was diagnosed with an ingrown toenail, and prescribed Keflex.  Plaintiff was to return in one week.

On August 20, 2009, Dr. Ronald Boyle noted that Plaintiff was "doing fine."  (Tr. 390). Dr. Boyle noted Plaintiff was turned down for disability, and that Plaintiff had not had a recent seizure.  Plaintiff was noted as stable.  Plaintiff was to continue on his treatment plan,

On August 24, 2009, Plaintiff complained of an ingrown toenail.  (Tr. 378).  Dr. Chitsey noted that it was markedly better after a course of antibiotics.  Dr. Chitsey examined Plaintiff and then removed his toenail.

-3-

On September 4, 2009, Plaintiff was noted as being compliant with is treatment. (Tr. 389). Plaintiff reported he was eating well, sleeping well, and taking his medications. Plaintiff was noted as going through a lot of stress with his family.

On September 14, 2009, Plaintiff complained of right hip pain. (Tr. 379). Dr. Chitsey noted Plaintiff needed x-rays so that Plaintiff could take them to his pain management doctor. Plaintiff was also in need of a prescription for his Xanax. Plaintiff was diagnosed with chronic hip pain and anxiety and prescribed Xanax.

A Progress Note dated September 15, 2009, indicated that Plaintiff was trying to be supportive of all of his family at his own expense. (Tr. 388). Plaintiff reported frustration over not being found disabled.

On September 22, 2009, Plaintiff entered the North Arkansas Regional Medical Center emergency room after experiencing a seizure. (Tr. 356-376). The treatment notes indicated that Plaintiff had missed a few doses of his Depakote due to a change in the supplier. Plaintiff was diagnosed with an epileptic seizure and discharged home in approved condition.

On September 23, 2009, Plaintiff presented to Dr. Chitsey's clinic for an emergency room follow-up due to seizure activity. (Tr. 379, 611). Dr. Chitsey noted that Plaintiff reported experiencing multiple seizures previously, and that Plaintiff had not mentioned these seizures to Dr. Cooper, a neurologist, who treated Plaintiff for his chronic pain. Dr. Chitsey noted that Plaintiff did take Depakote but this prescription was for psychiatric issues and not neurologic issues. Dr. Chitsey noted that Plaintiff had a Depakote level check in the emergency room and that it was okay. Upon examination, Dr. Chitsey noted that Plaintiff's sensory, motor and coordination exams were all normal. Dr. Chitsey diagnosed Plaintiff with a seizure disorder and

-4-

instructed Plaintiff not to drive for twelve months.  Dr. Chitsey noted Plaintiff was going to undergo a MRI of the brain, and that he would be sending Plaintiff to Dr. Cooper with a diagnosis of a seizure disorder.

On September 24, 2009, Plaintiff underwent a MRI of the brain that revealed a normal brain and ventricles, and bilateral maxillary mucosal thickening.  (Tr. 355).  Dr. Chitsey noted the normal MRI results in treatment records dated September 25, 2009. (Tr. 379).

A Progress Note dated September 24, 2009, reported that Plaintiff had had a seizure. (Tr. 386).  Nurse Collins noted Plaintiff had been taking Depakote 250 mg twice a day.  Plaintiff reported that he was feeling better now.   Plaintiff's Depakote dosage was increased.

On September 30, 2009, Plaintiff was seen by Dr. Chitsey.  (Tr. 377). Dr. Chitsey noted Plaintiff asked him for a "favor."  Plaintiff reported that he had failed a urine drug test at his pain specialist's office and was wondering if Dr. Chitsey would manage the pain medication from this point forward.  Dr. Chitsey noted that he had told Plaintiff about one month ago that he was seriously considering letting go of both Plaintiff and his wife as patients, as Plaintiff had been "doctor shopping."  Dr. Chitsey noted at that time, Plaintiff had begged him not to let him go as a patient.  Dr. Chitsey told Plaintiff he would no longer treat him, and gave Plaintiff a thirty day grace period to find another physician.  On October 14, 2009, Dr. Chitsey faxed a referral to Dr. Weber's office.  (Tr. 377).  Dr. Weber refused to treat Plaintiff.

A Psychiatric Progress Note dated October 8, 2009, indicated that Plaintiff was out of his Depakote for one day and experienced a seizure.  (Tr. 383-384).  Plaintiff reported that he was "a mess," that he did not get "disability," and that he was "about ready to break."   Plaintiff was

-5-

also seen in a therapy session on this date and expressed fear resulting from his recent seizure and sadness over the loss of disability.  (Tr. 385).

On October 23, 2009, Plaintiff was seen by Dr. Cathy C. Luo.  (Tr. 425-).  Dr. Luo noted Plaintiff complained of right hip pain, as a result of being in a motor vehicle accident in June of 2006.  Plaintiff also reported pain in is left hip. Dr. Luo noted Plaintiff was on Endocet, Soma and Xanax.  Plaintiff reported that he had applied for disability which had caused him a lot of anxiety.  Upon examination, Dr. Luo noted Plaintiff's cervical range of motion was within normal limits.  Plaintiff's lumbosacral spine had a decreased range of motion and Plaintiff had a positive straight leg test, bilaterally, but he was nontender to palpation. Plaintiff's motor strength was normal in all of his extremities, he had a normal gait, and he could stand without difficulty.  Dr. Luo diagnosed Plaintiff with lumbar spondylosis; displacement of a lumbar intervertebral disc without myelopathy; and pain in the joint, pelvic region and thigh.  Plaintiff was prescribed medication.

On November 19, 2009, Plaintiff requested an increase in his Klonopin, as he had been experiencing an increase in anxiety due to stress in his life.  (Tr. 382). Treatment notes indicated that Dr. Boyle authorized the medication refill.

On November 20, 2009, Plaintiff reported that his medication were working well.  (Tr. 429, 440).  Dr. Luo noted that Plaintiff requested one extra Methadone pill a day, and a decrease in his Percocet.  Plaintiff reported his pain level with medication was a two on a ten point scale. Upon examination, Dr. Luo noted Plaintiff's cervical range of motion was within normal limits. Plaintiff's lumbosacral spine had a decreased range of motion and Plaintiff had a positive straight leg test, bilaterally, but he was nontender to palpation. Plaintiff's motor strength was normal in

-6-

all of his extremities, he had a normal gait, and he could stand without difficulty.  Dr. Luo diagnosed Plaintiff with lumbar spondylosis; displacement of a lumbar intervertebral disc without myelopathy; and pain in the joint, pelvic region and thigh.  Plaintiff was prescribed medication.

On December 4, 2009, Dr. Boyle noted that Plaintiff reported that he was "doing better." (Tr. 434-435).  Plaintiff reported that is mother was in the hospital which was stressful to him.  Plaintiff reported that his appetite was pretty good.  Plaintiff requested, and Dr. Boyle agreed, that Plaintiff could use an increase in his Klonopin dosage.  Dr. Boyle also completed a seizure disorder report indicating that Plaintiff had two to three seizures per year, and that his last seizure was in September of 2009.  (Tr. 432-433).

A Progress Note dated December 30, 2009, reported Plaintiff's feelings regarding his mother's illness.  (Tr. 490).  Plaintiff reported some family issues stemming from a sister and the need to put his mother first.

On January 20, 2010, Plaintiff reported that his medications were working well.  (Tr. 437).  Plaintiff requested decreasing his Xanax so that his Methadone dosage could be increased.  Upon examination, Dr. Luo noted Plaintiff's cervical range of motion was within normal limits.  Plaintiff's lumbosacral spine had a decreased range of motion and Plaintiff had a positive straight leg test, bilaterally, but he was nontender to palpation.  Plaintiff's motor strength was normal in all of his extremities, he had a normal gait, and he could stand without difficulty.  Dr. Luo diagnosed Plaintiff with lumbar spondylosis; displacement of a lumbar intervertebral disc without myelopathy; and pain in the joint, pelvic region and thigh.  Plaintiff was prescribed medication.

AO72A
(Rev. 8/82)

On January 28, 2010, after reviewing all of Plaintiff's medical records, Dr. Ronald Crow, a non-examining medical consultant, opined that Plaintiff did not have a severe physical impairment. (Tr. 450). After reviewing additional medical records, on June 20, 2010, Dr. Bill F. Payne affirmed Dr. Crow's opinion. (Tr. 502).

In a Master Treatment Plan dated February 3, 2010, Plaintiff's diagnoses consisted of cyclothymic disorder, a panic disorder with agoraphobia, alcohol dependence in remission, and cluster "B" traits. (Tr. 486). The plan included medication management and individual therapy. Plaintiff was seen in therapy on February 3, 2010, April 22, 2010, July 1, 2010, August 4, 2010, September 1, 2010, October 7, 2010, October 20, 2010, November 3, 2010, December 1, 2010. (Tr. 489, 504-506, 509-512, 514).

On February 11, 2010, Plaintiff was seen by Nurse Collin so that Plaintiff could receive a medication refill. (Tr. 484). Plaintiff reported that he was doing well and eating okay. Plaintiff reported no increased anxiety and he had no other complaints.

On March 1, 2010, Plaintiff underwent a consultative mental diagnostic evaluation performed by Dr. Robert L. Hudson. (Tr. 451, 480). Plaintiff reported an increase in his seizure activity, and noted that his last one was in August of 2009. After examining Plaintiff, Dr. Hudson diagnosed Plaintiff with a mood disorder, an anxiety disorder, and a personality disorder. Plaintiff was assessed with a GAF of 55-65. Dr. Hudson noted that Plaintiff was able to spend time watching television and that he helped with cleaning. Dr. Hudson opined Plaintiff had some limitations with: social interactions; mental/cognitive abilities in that he has difficulty with multi-tasking; attending and sustaining concentration on basic tasks; and persisting in completing tasks. Dr. Hudson noted Plaintiff would be able to handle his own funds.

-8-

On March 10, 2010, Dr. Brad Williams completed a Psychological Review Technique Form (PRTF), indicating that Plaintiff had mild restrictions of his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration persistence or pace; and episodes of decompensation, each of extended duration. (Tr. 460-473). Dr. Williams also completed a mental RFC assessment stating that Plaintiff has moderate limitations in the following areas: in his ability to carry out detailed instructions; in his ability to maintain attention and concentration for extended periods; in his ability to sustain an ordinary routine without special supervision without being distracted by them; in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in his ability to accept instructions and respond appropriately to criticism from supervisors; in his ability to respond appropriately to changes in the work setting; and in his ability to set realistic goals or make plans independently of others. (Tr. 456-459). Dr. Williams opined that Plaintiff was "able to perform work where interpersonal contact is incidental to work performed, e.g., assembly work; complexity of tasks is learned and performed by rote, few variables, little judgement; supervision required is simple, direct and concrete (unskilled)." (Tr. 458).

On April 2, 2010, Plaintiff reported that he had not had any seizures since September, but then indicated a minor seizure a couple of months ago. (Tr. 478, 515). Dr. Boyle noted that Plaintiff indicated his mood was "stable." Dr. Boyle noted that Plaintiff was "not really" depressed, and that Plaintiff's anxiety was a three on a ten point scale. Dr. Boyle indicated that Plaintiff needed to see a neurologist.

-9-

On March 18, 2010, Plaintiff reported that his medications were effective and he denied experiencing side effects. (Tr. 530). Upon examination, Dr. Luo noted Plaintiff's cervical range of motion was within normal limits. Plaintiff's lumbosacral spine had a decreased range of motion and Plaintiff had a positive straight leg test, bilaterally, but he was nontender to palpation. Plaintiff's motor strength was normal in all of his extremities, he had a normal gait, and he could stand without difficulty. Dr. Luo diagnosed Plaintiff with lumbar spondylosis; displacement of a lumbar intervertebral disc without myelopathy; and pain in the joint, pelvic region and thigh.

On May 17, 2010 , Plaintiff reported that his medications were effective. (Tr. 527). Plaintiff denied side effects from his medications. Dr. Luo noted that Plaintiff was happy that he found a job as a truck driver for three days a week. Upon examination, Dr. Luo noted Plaintiff's cervical range of motion was within normal limits. Plaintiff's lumbosacral spine had a decreased range of motion and Plaintiff had a positive straight leg test, bilaterally, but he was nontender to palpation. Plaintiff's motor strength was normal in all of his extremities, he had a normal gait, and he could stand without difficulty. Dr. Luo diagnosed Plaintiff with lumbar spondylosis; displacement of a lumbar intervertebral disc without myelopathy; and pain in the joint, pelvic region and thigh.

On June 17, 2010, Dr. Boyle completed a seizure report and indicated that Plaintiff had reported falling and hitting his head on concrete and that he had stopped breathing. (Tr. 496). Plaintiff reported he had seizure once a month. Dr. Boyle indicated he last examined Plaintiff in April of 2010.

-10-

On July 16, 2010, Plaintiff reported experiencing increased right hip pain. (Tr. 524). Plaintiff reported having more bad days than good days, and requested an increase in Percocet. Upon examination, Dr. Luo noted Plaintiff's cervical range of motion was within normal limits. Plaintiff's lumbosacral spine had a decreased range of motion and Plaintiff had a positive straight leg test, bilaterally, but he was nontender to palpation. Plaintiff's motor strength was normal in all of his extremities, he had a normal gait, and he could stand without difficulty.  Dr. Luo diagnosed Plaintiff with lumbar spondylosis; displacement of a lumbar intervertebral disc without myelopathy; and pain in the joint, pelvic region and thigh.

On September 15, 2010, Plaintiff reported that his medications were working well.  (Tr. 521).  Plaintiff reported that he had teeth removed the previous day, and that he was having some pain.  Plaintiff denied the use of alcohol.  Upon examination, Dr. Luo noted Plaintiff's cervical range of motion was within normal limits.  Plaintiff's lumbosacral spine had a decreased range of motion and Plaintiff had a positive straight leg test, bilaterally, but he was nontender to palpation. Plaintiff's motor strength was normal in all of his extremities, he had a normal gait, and he could stand without difficulty.  Dr. Luo diagnosed Plaintiff with lumbar spondylosis; displacement of a lumbar intervertebral disc without myelopathy; and pain in the joint, pelvic region and thigh.

On October 7, 2010, Dr. Boyle noted Plaintiff was experiencing some depression. (Tr. 508).  Dr. Boyle noted Plaintiff's last seizure was in September of 2009.

On November 15, 2010, Plaintiff reported that his medications were not working well. (Tr. 518).  Dr. Luo noted that Plaintiff was interested in getting off of Methadone and starting Morphine.  Plaintiff complained of a lot of bilateral hip pain worse on the left.  Plaintiff also

-11-

reported occasional alcohol use.  Plaintiff was instructed not to mix medications with alcohol. Upon examination, Dr. Luo noted Plaintiff's cervical range of motion was within normal limits. Plaintiff's lumbosacral spine had a decreased range of motion and Plaintiff had a positive straight leg test, bilaterally, but he was nontender to palpation. Plaintiff's motor strength was normal in all of his extremities, he had a normal gait, and he could stand without difficulty.  Dr. Luo diagnosed Plaintiff with lumbar spondylosis; displacement of a lumbar intervertebral disc without myelopathy; and pain in the joint, pelvic region and thigh. Dr. Luo decreased Plaintiff's Methadone and started Plaintiff on Morphine.

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

-12-

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

**IV.   Discussion:**

Plaintiff argues the following issues in this appeal: 1) the ALJ committed clear error in failing to find Plaintiff's alleged chronic pain located in his back, and legs, as well as the

-13-

residuals from two motor vehicle accidents to be severe impairments; 2) the ALJ erred in determining Plaintiff's RFC; and 3) the ALJ's decision is not supported by substantial evidence.

### A.      Plaintiff's Impairments:

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c).  To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The Step Two requirement is only a threshold test so the claimant's burden is minimal and does not require a showing that the impairment is disabling in nature. See Brown v. Yuckert, 482 U.S. 137, 153-54 (1987).   The claimant, however, has the burden of proof of showing he suffers from a medically-severe impairment at Step Two.  See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

Plaintiff argues that the ALJ improperly found Plaintiff's alleged chronic pain located in his back, and legs, as well as the residuals from two motor vehicle accidents to be severe impairments.  While the ALJ found that Plaintiff's alleged physical impairments were non-severe, the ALJ specifically discussed these alleged impairments, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe.  (Tr. 9-11). See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ

AO72A
(Rev. 8/82)

must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). Thus, the ALJ's finding that Plaintiff's alleged chronic pain located in his back, and legs, as well as the residuals from two motor vehicle accidents were not "severe" impairments does not constitute reversible error.

### B.    The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In determining that Plaintiff maintained the RFC to perform work at all exertional levels with some limitations, the ALJ considered the medical assessments of the non-examining agency medical consultants; the consultative examiner's assessment; Plaintiff's subjective complaints; and his medical records. The Court finds, based upon the well-stated reasons outlined in the

-15-

Defendant's brief, that Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision.  Therefore, the Court finds there is substantial evidence of record to support the ALJ's RFC findings for the relevant time period.

### C.     Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, and the Defendant's well-stated reasons set forth in his brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  The Court would note that despite Plaintiff's testimony at the administrative hearing that he had not worked since 2006, the evidence revealed that Plaintiff reported to Dr. Luo in May of 2010, that he was happy to be driving a truck three days a week.  (Tr. 527).  Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's credibility findings.

-16-

D.    **Past Relevant Work:**

Plaintiff has the initial burden of proving that he suffers from a medically determinable impairment which precludes the performance of past work.  <u>Kirby v. Sullivan</u>, 923 F.2d 1323, 1326 (8th Cir. 1991).  Only after the claimant establishes that a disability precludes performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work.  <u>Pickner v. Sullivan</u>, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if he retains the RFC to perform:

> 1.  The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2.  The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); <u>Martin v. Sullivan</u>, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

The Court notes in this case the ALJ relied upon the testimony of a vocational expert, who testified that Plaintiff's past relevant work consisted of some unskilled jobs.  <u>See</u> <u>Gilbert v. Apfel</u>, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted).  Accordingly, the ALJ properly concluded Plaintiff could perform his past relevant work as a fast food worker, a chalk board framer, a glue machine tender, and a finish inspector.

-17-

IV.     **Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of February, 2013.

/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-18-

AO72A
(Rev. 8/82)